IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Joshua Andrew Monroe, # 344735, | ) | |
| | ) | |
| | ) | Civil Action No. 6:14-3565-RMG-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Dorchester County Grand Jury in September 2008 on two counts of armed robbery (2008-GS-18-1090, -1100), three counts of kidnaping (2008-GS-18-1092, -1099, -1104), and assault and battery of a high and aggravated nature (2008-GS-18-1102).[1] The

---

[1] The petitioner is also serving a concurrent sentence for charges from Charleston County – three counts of kidnaping for which he received a 25 year sentence of imprisonment on each count; two counts of armed robbery for which he received a 25 year sentence for each count; attempted armed robbery, for which he received a sentence of 20 years; and first degree criminal sexual conduct, for which he received a sentence of 25 years, with all sentences to be served concurrently. He pleaded to the Charleston County
(continued...)

petitioner was represented by Michelle Suggs.  On November 14, 2011, the petitioner pleaded guilty before the Honorable R. Ferrell Cothran, Jr., South Carolina Circuit Court Judge (app. 7-9).[2]  After the guilty plea, the petitioner was sentenced to an aggregate 20 year sentence to be served concurrently to his current SCDC sentence.  The petitioner received 20 year sentences for the two armed robbery counts, 20 years on the three kidnaping charges, and  10 years for assault and battery of a high and aggravated nature (app 14-15).  All sentences were concurrent.  The petitioner did not file a direct appeal.

## FACTS

The factual basis of the guilty plea reflects the following.  The assault and battery and kidnaping on Indictments 1102 and 1104 arose from an incident at the Chuck E. Cheese Restaurant in North Charleston, South Carolina.  On June 2, 2008, the petitioner, along with co-defendants Brian Mulligan and Corey Larkin, sat outside waiting for the business to close and for the manager to leave with a cash bag.  A tractor trailer was parked at the restaurant with someone in it, so the petitioner and his co-defendants could not rob the restaurant employee at that location.  The restaurant employee left in his car and drove to his residence.  The petitioner and his co-defendants followed the employee home and pulled up behind him armed with stun guns and pistols.  They ordered the employee to get back into his car with one of the defendants.  The other defendants followed them (app. 11).  While on the way back to the restaurant, the victim was struck with the pistol resulting in the assault and battery of a high and aggravated nature charge. They arrived at the restaurant and completed the robbery in Charleston County (app. 11-12).

---

[1](...continued)
charges on November 8, 2010 (app. 5).

[2]  The petitioner pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to all counts except for one count of kidnaping (app. 4-15)

2

The second group of charges arose from a May 10, 2008, incident arising at Frankie's Fun Park on Dorchester Road.  Similarly, the three perpetrators were waiting on the business to close and an employee to exit with the money.  When the employees came out, the perpetrators, armed with stun guns ordered them back inside and forced them to open the safe and committed the robbery (app. 12).

The third set of charges involved a May 14, 2008, incident at Applebee's Restaurant on Ashley Phosphate Road where a similar robbery occurred with the defendants ordering the employees to return after the business closed and ordering them to lie face down at gun point while they stole cash from the business (app. 12-13).

After the factual basis was stated, the petitioner initially confirmed that the facts were correct.  He stated that he was pleading guilty because he was guilty (app. 13) The court accepted the negotiated plea recommendation offered by the petitioner's counsel (app. 14)

### PCR

On October 10, 2012, the petitioner filed a *pro se* application for post-conviction relief ("PCR") (app. 17-23) in which he alleged:

> 1. Ineffective assistance of counsel.
>      a. Counsel Michelle Suggs failed to investigate or properly inform me of the matter surrounding my case.
>
> 2. Guilty plea "was not" voluntarily or intelligently made.

(App. 19).

The relief he sought was "plea agreement kept and/or statement suppressed and/or pleas vacate and/or new trial and/or any other relief I may be entitled to and/or the courts deem just and fair." (app. 22).  The respondent, through Assistant Attorney General Megan Harrigan, made its return on March 13, 2013, requesting an evidentiary hearing.

3

On October 15, 2013, the petitioner amended his application with an 11 page *pro se* document (app 24-32) alleging, "Counsel was ineffective for advising the applicant to plead guilty when counsel never investigated the case in an effort to determine how to proceed, which rendered the applicant's guilty pleas invalid because they were not knowingly, voluntarily or intelligently made and was a denial of due process. . . " (app. 25). In the amendment, the petitioner claimed that on June 9, 2008, while in the Charleston County Detention Center awaiting trial on the Charleston County charges, he was transported to Dorchester County with co-defendant Bryan Mulligan to be questioned about Dorchester County crimes. The petitioner claimed that he contacted his retained counsel Michael DuPree by telephone and "Attorney DuPree advised the Applicant that he should speak with the officers and answer any questions they may have" (app. 25-26). The petitioner asserted that based upon DuPree's advice, he answered the questions and incriminated himself "in a variety of unlawful activities in Dorchester County" (app. 26). He declared that once he was returned to Charleston, he met with DuPree and informed him of the predicament he put himself in by answering the questions and claimed that DuPree then walked out. The petitioner claimed that he then made a complaint with the Fee Dispute Board on the $7500 that his family had paid to DuPree. The petitioner was appointed new counsel in the Charleston case.[3] In his PCR amendment, the petitioner claimed that he when he pleaded guilty in Charleston, he was advised that the Dorchester County charges would be dropped, and he was thereafter incarcerated in the SCDC in

---

[3] The petitioner was indicted in Charleston County in October 2008 for three counts of kidnaping, two counts of armed robbery, attempted armed robbery, and first degree criminal sexual conduct. The petitioner was represented by Milton Stratos. On November 18, 2010, the petitioner pleaded guilty. On February 3, 2011, the petitioner was sentenced by the Honorable Roger M. Young, Sr., to 20 years imprisonment for attempted armed robbery and 25 years on the remaining charges. The sentences were to be served concurrently. The petitioner appealed. The appeal was dismissed for failure to serve opposing counsel pursuant to Rule 203, SCACR. The Remittitur was issued on October 11, 2012. On August 17, 2013, the petitioner filed a PCR application in Charleston County. *Monroe v. State*, 2013-CP-10-5445. The matter is still pending.

2010. The petitioner asserted that he learned that the Dorchester charges were still pending after he began serving his Charleston sentence (app. 26).

On the advice of new counsel, Michelle Suggs, the petitioner pleaded guilty on November 14, 2011 (app. 26-27). He complained that his guilty plea advice from Ms. Suggs in Dorchester County was prejudicial because he asserted that he did not participate in any crime in Dorchester County. He claimed that counsel never investigated the circumstances of his Dorchester County statement. The petitioner asserted that counsel never knew the statement existed, and therefore she could not have properly advised him concerning going to trial and attempting to have the statement suppressed because counsel DuPree was not present. He claims that if he knew he could have had the statement suppressed, he would not have pleaded guilty and would have insisted on a pretrial suppression hearing and trial (app. 27). He claims counsel Suggs coerced him to plead guilty under *Alford* and that he insisted that he was not guilty of the Dorchester charges (app. 28).

An evidentiary hearing was convened on November 1, 2013, at the Dorchester County Courthouse before the Honorable Diane S. Goodstein. The petitioner was present and was represented by Charles T. Brooks, III. The respondent was represented by Assistant Attorney General Megan E. Harrigan of the South Carolina Attorney General's Office. Testimony was received from the petitioner, former counsel Michael DuPree, and plea counsel Michelle Suggs.

The petitioner testified that counsel Suggs was ineffective because she did not properly investigate the circumstances of the statement that was written on his behalf leading up to his plea (app. 47). He stated that Michael DuPree had been his lawyer when Dorchester County transported him from Charleston to question him. He testified that he contacted DuPree before the questioning began and that DuPree told him to provide the statement. The petitioner opined that in hindsight this was harmful to him and he would not

5

do it again.  He asserted that counsel Suggs should have attempted to get the statement suppressed and she should have put more effort into his case.  He claimed that "there was nothing linking me to any crime other than me incriminating myself."  He stated that he pleaded guilty only because counsel Suggs convinced him to plead guilty.  He stated that he saw her twice. She told him that he should plead guilty because his co-defendants had already pled in Charleston (app. 49).

The petitioner stated that he had wanted a continuance in his PCR that day to get telephone records because if he had not been advised by his attorney to speak to the police, he felt that the phone records would remove speculation and prove that he called his attorney and afterwards he got the Dorchester charges (app. 52).

On cross-examination, the petitioner confirmed that he met with counsel Suggs twice and reviewed some of the discovery material.  He claimed that he did not review his statement (app. 53).  He stated that he could not remember everything that was in the statement, but it implicated him in the "Chuck E. Cheese" incident.  He confirmed that other Dorchester County indictments implicated him in a robbery and kidnaping at Frankie's Fun Park, a robbery at Applebee's, and the assault and battery at Chuck E. Cheese (app. 54).  He also recalled that the transcript of his guilty plea showed the solicitor's facts regarding the Chuck E. Cheese kidnaping were that he and the co-defendants followed the victim home.  The petitioner claimed he "allegedly" gave a statement admitting these facts after he spoke with counsel DuPree.  He claimed his statement to the Dorchester detectives was somewhat accurate (app. 55).  The petitioner stated that he and his co-defendants were all implicated in the string of armed robberies in Charleston and Dorchester Counties He confirmed the sentences he received in Charleston in 2010 and in Dorchester in 2011 (app. 57).

Counsel DuPree also testified at the PCR hearing.  DuPree stated he began representing the petitioner in June 2008.  The petitioner's family presented an alibi defense

6

at his office.  At that time, he hired Dick Vance, a former lieutenant in the Charleston Police Department, to investigate the case.  Mr. Vance reviewed videos of one of the crimes at the Charleston Police Department and was able to identify the petitioner in the video (app. 67). Therefore, they proffered a statement in Charleston implicating the petitioner and the other defendants.   Counsel DuPree was present when the petitioner made the statement. Counsel DuPree did not recall speaking with the petitioner about the Dorchester County statement (app. 69, 72).  He stated that he was aware of the Dorchester County incidents. He stated that everything kind of happened in North Charleston and around the county lines and all the charges accumulated within a short time period (app 70).  With regard to the alleged alibi, he stated that the petitioner claimed that he had gone to Florida.  However, DuPree stated that the times did not fit. Counsel DuPree stated he stopped representing the petitioner in November or December 2008 (app 71).

Plea counsel Suggs testified that the petitioner gave two statements to law enforcement.  She stated that she discussed having the statements suppressed with him when she visited with him at McCormick.  She advised him that in her opinion they would not be suppressed (app.75-76).  The first statement was given to the North Charleston Police Department.  The petitioner had signed a waiver of rights form and appeared to be an intelligent person.  At that point, he had confessed to the entire set of incidents at the Chuck E. Cheese including the robbery and kidnaping.  The restaurant was in Charleston County, and since the petitioner followed the victim into Dorchester County and kidnaped him, charges were filed in both counties (app. 76).

Plea counsel Suggs further testified that the second statement was given to the Summerville Police Department.[4]  The petitioner signed a waiver of his rights and never

---

[4]On the basis of the record before the court, only two statements were made by the petitioner. The first was the statement to the North Charleston Police Department with counsel DuPree present (*see* app. 67-68, 76).  Plea counsel Suggs testified in the PCR (continued...)

indicated to counsel that the statement was not knowing or voluntary.  She asked him if it was his signature, and he said that it was. She stated that they discussed the evidence in the case. She stated the petitioner told her that there was no forensics, no DNA, or fingerprints.  However, she stated that she responded that there were two statements by him incriminating him and that she had no legal reason to think that they would be suppressed.  She confirmed the first statement implicated the petitioner in the Chuck E. Cheese incident and coming to Dorchester County and kidnaping the employee and could have been used in a trial of the Dorchester County cases. She stated the Summerville statement[5] also implicated him in the Chuck E. Cheese incident (app. 77-78).

Counsel Suggs testified that in light of the petitioner's admission to the Chuck E. Cheese charge alone, if it went to trial on the kidnaping charge, he faced a mandatory life without parole sentence, and he already had two kidnaping charges from the Charleston case.  Counsel was able to negotiate down to 20 years and wrap everything up concurrent with the Charleston convictions and sentence of 25 years (app. 78).  Three other kidnaping charges, two armed robberies, two burglaries, and three possession of a weapon during a violent crime charges were dismissed in an agreement with Dorchester County.  The petitioner received credit on his time back to his arrest on the Charleston charges on June 6, 2008 (app. 78-79; *see* app. 14).

On February 2, 2014, Judge Goodstein issued her written order of dismissal. (app. 83-88).  No motion to alter or amend was made by either side.

---

[4](...continued)
hearing that the second statement was made to the Summerville Police Department (app. 77).  This is apparently the same statement that the petitioner and counsel DuPree refer to as the "Dorchester County statement" (app. 47-48, 55-58, 68).

[5]*See id.*

***PCR Appeal***

   The petitioner appealed his PCR to the South Carolina Supreme Court.  In the appeal, the petitioner was represented by Robert M. Pachak of the South Carolina Commission on Indigent Defense, Division of Appellate Defense.   On April 28, 2014, appellate counsel filed a *Johnson* petition for a writ of certiorari and petition to be relieved as counsel.  In the *Johnson* petition, counsel claimed the sole issue for review was "whether plea counsel was ineffective in failing to pursue an alibi defense?" (doc. 20-1, *Johnson* pet. at 2).

   On June 12, 2014, the petitioner file a *pro se Johnson* petition in the South Carolina Supreme Court.  In his pleading, the petitioner alleged counsel Brooks at the PCR hearing failed to render effective assistance and never investigated the circumstances concerning counsel DuPree's advice on the Dorchester County statement.  He relied upon *Martinez v. Ryan,* 132 S.Ct. 1309 (2012) to assert that PCR counsel Brooks was ineffective and for a remand for a new PCR hearing to address the issue of the Dorchester County statement.  He further claimed that Brooks knew the petitioner had an alibi, which was not addressed in the PCR order and if they went to trial, counsel Suggs could have requested a charge on alibi (doc. 20-2, *pro se Johnson* pet. at 3-7).

   On July 24, 2014 the South Carolina Supreme Court entered its order denying the petition for writ of certiorari after review pursuant to *Johnson v. State* and granted counsel's request to be relieved (doc. 20-3).  The Remittitur was issued on August 11, 2014 (doc. 20-4).

## FEDERAL PETITION

   On September 9, 2014, the petitioner filed his § 2254 petition (doc. 1).  On January 7, 2015, the respondent filed a motion for summary judgment (doc. 21).  By order filed January 8, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible

consequences if he failed to adequately respond to the motion (doc. 22).  On March 18, 2015, the petitioner filed a response in opposition (doc. 28)

In his federal petition the petitioner makes the following claims:

I. Counsel was ineffective for advising the Petitioner to plead guilty when counsel never investigated the case in an effort to determine how to proceed, which rendered the Petitioner's guilty pleas invalid because they were not knowingly, voluntarily or intelligently made, and a denial of due process.

a. Petitioner asserts that while being housed at the Charleston Detention Center on the Charleston charges, on June 9, 2008, an officer from the Dorchester County Sheriff's Department arrived at the detention center to transport Petitioner and one of his two co-defendants, Bryan Mulligan, to Dorchester County to be questioned on a Dorchester crime. Petitioner asserts that before leaving Charleston, he asked to contact counsel DuPree who had been retained on the Charleston charges and he was advised he would be allowed to confer before questioning began. He claims that after arriving at Dorchester, he was allowed to make a phone call to DuPree who advised Petitioner "that he should speak with the officers and answer any questions they may ask."

b. Petitioner asserts that based upon DuPree's advice, he answered questions asked by Dorchester County and incriminated himself in a variety of unlawful activities in Dorchester County. Upon returning to Charleston DuPree visited him and Petitioner informed DuPree of the predicament he had put himself in by answering the questions without the aid of counsel . DuPree walked out of the room and he did not see him again until the PCR hearing.

c. Petitioner asserts that he filed a fee dispute attempting to receive $7500 of the fee that had been paid, but the Fee Dispute Board ruled in favor of DuPree.

d. Petitioner was appointed new counsel on the Charleston charges. He claims that when he pled guilty on the Charleston charges, he was told that the Dorchester County charges would be dropped. After sentencing, he was transported to SCDC to begin service of his sentences from Charleston. At SCDC, he

10

found out the Dorchester charges were still pending against him.

e. On November 14, 2011, upon advice of new appointed counsel Michelle Suggs, Petitioner pled guilty to the Dorchester County charges.

f. He claims that Ms. Suggs advising him to plead guilty was prejudicial because he did not participate in any crime in Dorchester County. He asserts that counsel Suggs did not investigate the circumstances of his Dorchester County statement that he allegedly made. He claims that counsel Suggs did not even know the contents of the statement because it was not submitted by the state in discovery material nor was the rights waiver form allegedly signed by the Petitioner in Dorchester County submitted by the state.

> i. Petitioner claims counsel therefore does not know what the circumstances are that would have made Petitioner waive his right to remain silent and give a statement since counsel never knew a statement existed. "She could have advised the Petitioner that had he gone to trial she could have had the statement suppressed because he waived the right to remain silent on advice of an attorney (Michael DuPree) who later abandoned him."

> ii. Petitioner claims that had he known he could have had the statement suppressed, he would not have pled guilty and would have insisted on going to trial. He claims that in a pretrial hearing he could have moved to determine the voluntariness of the statement and without the statement, there was no evidence against him on any Dorchester County crime.

II. Plea counsel was ineffective for failing to pursue an alibi defense, which denied the Applicant due process of law.

> a. Petitioner testified that an incriminating statement he made only attached him to one crime he was charged with (citing app. 49-50). He asserts that he told counsel his mother could be an alibi witness and that she had video footage of Petitioner at the time of the robberies,

11

(citing app. 69). He testified that the video randomly disappeared. He complained that PCR counsel Brooks never investigated the whereabouts of the video.

III. Post-conviction relief counsel was ineffective for failing to investigate the issues raised in his application and failed to properly prepare for the hearing, which denied Petitioner due process of law.

a. PCR counsel knew that Petitioner had made an incriminating statement without an attorney present and counsel knew that the state had failed to produce any waiver form signed by Petitioner or the statement to indicate that he had waived his rights and gave statement freely and voluntarily.

b. Petitioner claims PCR counsel never investigated why "DuPree threw a wrench into Petitioner's case by destroying the video footage of the Petitioner that would have supported an alibi defense and for advising Petitioner to talk with officers from the Dorchester County Sheriff's Office which incriminated the Petitioner in numerous crimes."

c. At the outset of the PCR hearing, PCR counsel moved for a continuance in order to subpoena phone records to support the allegation that he spoke with counsel DuPree on the day Dorchester County officials wanted to question him. However, the continuance motion was denied. PCR counsel had advised the court that Petitioner had asked for the phone records to be subpoenaed that morning. Petitioner asserts that the reason he asked that morning was because he had not seen or spoken with PCR counsel Brooks until the morning of the hearing.

(Doc. 1-1, pet. atts. at 1-6).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

12

as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Exhaustion*

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley*

*v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[6]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The respondent acknowledges that the petitioner has no available state court remedies left to him, and therefore he has technically exhausted his claims (doc. 20, m.s.j. at 19-21).

### Procedural Bypass

The respondent argues that certain subparts of the petitioner's grounds for relief are procedurally barred. Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

15

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.   However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court  carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754-55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

**Merits**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

17

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner must show that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference - deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is

> "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Ground One

In his first ground for relief, the petitioner claims plea counsel Suggs was ineffective prior to the guilty plea because she did not adequately investigate the circumstances surrounding his Dorchester County statement.[7] Specifically, he claims that the statement was the basis of his guilty plea, but he gave the statement after advice from his earlier counsel (doc. 1-1, pet. att. at 1-2). In rejecting the petitioner's claim that his plea was improperly entered based upon ineffective assistance of counsel, the PCR court found as follows:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).
>
> In a post-conviction relief action, an applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985). When an applicant alleges ineffective assistance of counsel as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984); *Butler*, 286 S.C. 441, 334 S.E.2d 813.

---

[7]As noted above, this appears to be the same statement that plea counsel Suggs referred to as being made to the Summerville Police Department (*see* app. 77).

The proper measure of performance is whether an attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Butler*, 286 S.C. 441, 334 S.E.2d 813. The applicant must overcome this presumption to receive relief. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." *Cherry*, 300 S.C. at 117, 385 S.E.2d at 625 (citing *Strickland*). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cherry*, 300 S.C. at 117-18, 386 S.E.2d at 625. With respect to guilty plea counsel, the applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985).

"A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of a plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial." *Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011), citing *Rolen v. State*, 384 S.C. 409, 413, 683 S.E.2d 471, 474 (2009).

After careful review based on the standard discussed above, this Court finds that Applicant has failed to carry his burden in this action. Specifically, this Court finds that Counsel's testimony is very credible while Applicant's testimony is not credible. In support of his allegations, Applicant testified that Counsel was ineffective because she "should have put more effort into his case." He elaborated that Counsel should have contacted his mother, who could have provided an alibi for him, and that Counsel should have investigated whether video surveillance from the armed robberies existed. Applicant did not present any witnesses or evidence at the evidentiary hearing and was not able to articulate what benefit, if any, could have been realized from additional investigation. He acknowledged that Counsel met with him twice before his guilty plea, reviewed

20

all discovery materials with him, discussed possible defenses with him, and answered his questions. He testified that she reviewed the maximum and minimum sentences with him and presented him with the State's plea offer for an aggregate sentence of twenty-five years to be served concurrently to his current SCDC sentence of the same length. He testified that it was his decision to plead guilty and he pled guilty because he wanted to take advantage of the State's favorable plea offer that would not require him to serve any additional time beyond his current SCDC sentence.

Counsel testified that she met with Applicant twice before his guilty plea, with each meeting lasting several hours. She testified that she reviewed Applicant's discovery with him thoroughly during these meetings, including two statements Applicant gave law enforcement implicating himself in the crimes. She elaborated that the Dorchester County and Charleston County charges all stemmed from a string of Armed Robbery in the North Charleston area, spanning both counties, in which Applicant and his co-defendants all participated. She testified that at the time she was appointed, Applicant was incarcerated within SCDC serving a twenty-five year sentence from a guilty plea Applicant had already entered to the Charleston County charges. She testified that the State made Applicant a plea offer for an aggregate sentence of twenty-five years to be served concurrently to his current SCDC sentence. She testified that the plea offer was also for the dismissal of ten related charges. She testified that she fully advised Applicant of his rights, including his right to trial. She testified that following their discussions, Applicant elected to take advantage of the states extremely favorable plea offer rather than risk a potential life sentence if convicted at trial, which was extremely likely.

This Court finds that Applicant has failed carry his burden of establishing that Counsel was ineffective for failure to investigate. Applicant failed to present any evidence or testimony to this Court as to what possible benefit could have been derived from additional investigation. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." *Moorehead v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998). The record from Applicant's guilty plea and the testimony presented at the evidentiary hearing all reveal that Counsel's performance was reasonable and prudent based on the circumstances of Applicant's case. Therefore, this allegation must be denied and dismissed with prejudice.

(App. 84-87).

The petitioner did not present this specific issue in the PCR appeal; accordingly, the ground is procedurally barred absent a showing of cause and prejudice or actual innocence. In his PCR appeal, the petitioner argued that his *PCR counsel* was ineffective in failing to properly investigate and present at the hearing "the circumstances surrounding the involuntary 'statement' made by the Petitioner to the Dorchester County detectives on the advice of Mr. DuPree" (doc. 20-2, *pro se Johnson* pet. at 6).[8] To the extent the petitioner argues here that the ineffective assistance of his PCR appellate counsel establishes cause for the default under *Martinez*, such claim fails. *Martinez* is not applicable to post-conviction appellate counsel. *See Martinez*, 132 S.Ct. at 1320 (holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts"); and *Saratt v. Cartledge*, Civil Action No. 8:14-cv-138-RBH, 2015 WL 628186, at *20 (D.S.C. Feb. 12, 2015) ("The *Martinez* exception does not extend to PCR appellate counsel. . . . Therefore, Petitioner has not demonstrated cause for not raising these issues in his petition for writ of certiorari, and these grounds are procedurally defaulted.").

To the extent the petitioner attempts to show cause for the default by arguing that his PCR counsel was ineffective in failing to properly investigate and show that his plea counsel was ineffective, such claim fails because this ineffective assistance of plea counsel claim lacks merit. *Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support . . . .). The PCR court found that counsel Suggs' testimony on this issue was "very credible," while the petitioner's testimony was "not

---

[8]This claim also was not raised by PCR appellate counsel in the *Johnson* petition (*see* doc. 20-1, *Johnson* pet.).

credible" (app. 85). *See Cagle v. Banker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."). The PCR court specifically noted plea counsel's testimony that she "reviewed [the petitioner's] discovery with him thoroughly during these meetings, including two statements [the petitioner] gave law enforcement implicating himself in the crimes" (app. 86). At the hearing, counsel Suggs stated that she confirmed with the petitioner that it was his signature on the waiver of rights form, and the petitioner never indicated to her that the statement to the Summerville Police Department[9] was not knowing or voluntary (app. 77). Under the petitioner's own theory, if true, he knowingly waived his right to counsel after he consulted with counsel DuPree prior to giving the statement (*see* app. 55-58). Accordingly, there was nothing to undermine the potential admissibility of the statement. As the PCR court found, "[The petitioner] has failed to present any evidence or testimony to this Court as to what possible benefit could have been derived from additional investigation" (app. 87).

Further, where a guilty plea is involved, in order to show prejudice as required under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner has failed to show that an inculpatory statement, voluntarily made after his claimed advice of counsel, would have ever been suppressed had he gone to trial. Counsel Suggs stated that, while the petitioner in their November 1, 2011, meeting initially desired a jury trial rather than accept the plea offer, after going over the statements and discovery and the risks of a life without parole sentence, the petitioner recognized that accepting the plea offer was in his best interest

---

[9]As noted above, it appears that the second statement referenced by counsel Suggs at the hearing as being given to the Summerville Police Department and referred to by the petitioner as the "Dorchester County statement" are the same statement. If the petitioner is referring to a different statement, he did not say so at the PCR hearing, and he has not indicated such in his pleadings.

when he had admitted involvement in at least the Chuck E. Cheese incidents (app. 78-80). It is clear that the petitioner's plea was knowing and voluntary. He waived his right to a jury trial and avoided the risk of life without parole sentencing in return for dismissal of ten additional counts and a 20 year sentence to run concurrently with an existing 25 year sentence that he had already received in Charleston County (app. 14-15, 78-79). The petitioner wholly failed in his burden of proof to show either how counsel's advice was improper or that his guilty plea was unknowing and unintelligently entered.

Within this ground for relief, the petitioner claims that he was told his Dorchester charges would be dropped when he pleaded guilty in Charleston in 2010, but when he began serving his time in SCDC, he found out that the Dorchester charges were still pending against him (doc. 1-1, pet. atts. at 2). The petitioner made this allegation in his amendment to his PCR application (app. 26); however, no evidence was presented on this issue at the state PCR hearing. Similarly, no evidence was presented at the 2011 plea that this was a part of a negotiation on the Charleston charges. To the contrary, the record suggests that the Dorchester authorities were pursuing that matter, and, until the November 1, 2011, meeting with counsel Suggs, the petitioner was seeking a jury trial on the charges. There is no showing that the state court was divested in any manner of the ability to prosecute the petitioner on the Dorchester cases. The issue was not addressed by the state PCR court in the dismissal order, and the petitioner did not file a Rule 59 motion. Thus, it was barred from state appellate consideration. Accordingly, it is procedurally barred here. Moreover, the petitioner has not shown cause and prejudice to excuse the default.  To the extent the petitioner claims that his PCR counsel was ineffective for failing to raise the issue in the PCR hearing or in a Rule 59 motion, cause has not been shown because the claim is wholly without factual support as discussed above. *See Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not

have any merit or that it is wholly without factual support . . . .").  Accordingly, it is procedurally barred from consideration here.

### Ground Two

The petitioner next contends that "[p]lea counsel was ineffective for failing to pursue an alibi defense" (doc. 1-1, pett. att. at 4).  Specifically, he claims that the incriminating statement he made only attached him to one of the crimes, and plea counsel Suggs should have contacted his mother, who "could be an alibi witness . . . [as] she had video footage of Petitioner at the time of the robberies" (*id.*).  This issue was raised in the PCR hearing during cross-examination of the petitioner:

Q. Did you ever give her the name of any potential witnesses?

A. I told her about my mother.

Q.  How would you have used your mother as a witness?

A.  My mother had video footage of me during some of these attempted alleged robberies.

Q.  So it would be an alibi defense?

A.  Yes, ma'am.

Q.  Did you ever give her any of these videos?

A.  I don't have the video.  The videos randomly disappeared.

Q.  And so you don't have those videos here today to show the Court?

A.  No ma'am.

Q.  So it's really just speculative whether these would have provided an alibi?

A.  Yes, ma'am.

(App. 60).  As summarized above, prior counsel DuPree testified that he had an investigator unsuccessfully seek evidence to support an alibi.  Further, he reviewed the video of one of

25

the crimes and was able to identify the petitioner himself (app. 70-71).  In finding that plea

counsel's performance was not deficient, the PCR court considered this issue:

> He elaborated that Counsel should have contacted his mother,
> who could have provided an alibi for him . . . .  Applicant did not
> present any witnesses or evidence at the evidentiary hearing
> and was not able to articulate what benefit, if any, could have
> been realized from additional investigation.

(App. 86).   This was the sole issue presented in the *Johnson* petition for writ of certiorari

(doc. 20-1).  Accordingly, the issue is not procedurally barred as argued by the respondent

(doc. 20, m.s.j. at 33).

This ground fails on the merits.  The PCR court's rejection of the ineffective

assistance of counsel ground did not result in an unreasonable application of *Strickland* and

was not based upon an unreasonable determination of facts in light of the state court

record.  The petitioner produced no witnesses in his PCR proceedings or other evidence

to support his assertion that plea counsel should have interviewed his mother or otherwise

pursued an alibi defense.  *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) ("This

Court has repeatedly held a PCR applicant must produce the testimony of a favorable

witness or otherwise offer the testimony in accordance with the rules of evidence at the

PCR hearing in order to establish prejudice from the witness' failure to testify at trial.");

*Glover v. State*, 458 S.E.2d 539, 540 (S.C.1995) ("[B]ecause the other witnesses

respondent claimed could have provided an alibi defense did not testify at the PCR hearing,

respondent could not establish any prejudice from counsel's failure to contact these

witnesses."); *Clark v. State*, 434 S.E.2d 266, 267–268 (S.C.1 993) (pure conjecture as to

what a witness' testimony would have been is not sufficient to show a reasonable probability

the result at trial would have been different); *Underwood v. State*, 425 S.E.2d 20, 22 (S.C.

1992) (prejudice from trial counsel's failure to interview or call witnesses could not be shown

26

where witnesses did not testify at PCR hearing).  Accordingly, the petitioner failed to show prejudice under *Strickland*, and this claim fails.

### Ground Three

In his final ground, the petitioner claims that PCR counsel Brooks was ineffective at the PCR hearing. He claims that PCR counsel Brooks knew that the petitioner gave the Dorchester County statement without counsel present and that the State failed to produce the waiver form. Further, he claims that PCR counsel Brooks failed to investigate why prior counsel DuPree "destroyed the video footage of the Petitioner that would have supported an alibi defense . . ."  He contends that the PCR counsel should have subpoenaed the phone record of prior counsel DuPree to support  the petitioner's claim that he called DuPree on June 9, 2008, when he was transferred to Dorchester County for questioning (doc. 1-1, pet. att. at 5-6).

As argued by the respondent, this ground is not cognizable as a free-standing claim. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).  *See also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings.").  To the extent that the petitioner argues that *Martinez*, 132 S .Ct. at 1320 allows him to bring such claims, *Martinez* "does not make such a free-standing claim cognizable." *Boseman v. Warden of Lee Corr. Inst.*, No. 2:11–3265, 2012 WL 5380636, at *5 (D.S.C. Sept.24, 2012), adopted by 2012 WL 5380701 (D.S.C. Oct.31, 2012). *Martinez* held that a petitioner "could demonstrate sufficient cause to excuse a procedural default upon a showing that counsel in the initial-review collateral proceeding was ineffective." *Id*. It did not recognize a free-standing claim based on ineffective PCR counsel. *Id*.; *see also Taylor v. Warden at Allendale*, No. 2:13-cv-2213-RMG, 2014 WL 4721183, at *5 (D.S.C. Sept. 22, 2014) (same).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 21) be granted. It is also recommended that the district court deny a certificate of appealability. The attention of the parties is directed to the notice on the next page.

s/Kevin F. McDonald
United States Magistrate Judge

July 17, 2015
Greenville, South Carolina

28

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).